# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

THEFLYONTHEWALL.COM, INC.,

              Plaintiff,

v.

TRADE THE NEWS, INC.,

              Defendant.

Civil Action No. 07 CV 9612 (CM)(GWG)

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Marc A. Lieberstein (MAL 7116)
Barry M. Benjamin (BMB 7350)
**DAY PITNEY LLP**
7 Times Square
New York, New York 10036
Phone: (212) 297-5800
Fax: (212) 916-2940

*Attorneys for Defendant,*
*Trade The News, Inc.*

1587416A03121007

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 3

ARGUMENT ................................................................................................................................. 5
    THE COMPLAINT FAILS TO MEET THE BARE MINIMUM PLEADING
    REQUIREMENTS TO MAKE OUT A COPYRIGHT OR MISAPPROPRIATION CLAIM . 5

POINT I ........................................................................................................................................ 5
    Plaintiff's Claims Should Be Dismissed Because They Are
    Barred By The Doctrine Of Equitable Estoppel ..................................................................... 5

    A.   Plaintiff Knew Of TTN's Allegedly Wrongful Conduct .................................... 6

    B.   Plaintiff Intended That Its Conduct Be Acted Upon And/Or
         Plaintiff Acted In A Way That The Defendant Had A Right
         To Believe It Was So Intended ............................................................................ 7

    C.   Defendant Was Ignorant Of The True Facts ....................................................... 7

    D.   Defendant Relied On Plaintiff's Conduct To His Detriment .............................. 8

POINT II ...................................................................................................................................... 8
    A Stay of this Case Should Be Considered Because A Cloud Hovers
    Over Plaintiff's Claims – Plaintiff's Copyrighted Works Are Alleged
    To Have Been Copied From A Third Party ............................................................................ 8

POINT III ..................................................................................................................................... 9
    Plaintiff's Copyright Claim Should Be Dismissed Because Plaintiff Has
    Not Alleged Copying Of Any Valid Copyrightable Works ................................................... 9

    A.   Plaintiff's Alleged Infringed Works Consist of Nothing More
         Than Mere Factual News Not Protected By The Copyright Act ...................... 10

    B.   Just As News and Facts Are Not Copyrightable, Nor Are Short
         Words and Phrases, Nor Is Financial News Jargon Common In the
         Industry, Which Is All That The Complaint Alleges ...................................... 12

         1.   Short Words and Phrases are not Copyrightable ………………...……………12

         2.   Under the Merger Doctrine, Common Industry Jargon Is Not Copyrightable…...15

i

C.    The Alleged Copying of "Mistakes" is of No Moment ................................................. 17

D.    No Substantial Similarity Exists Between The Copyrightable
       Elements Of Plaintiff's Newsfeed and Defendant's Works ........................................ 18

POINT IV...................................................................................................................................... 20
Plaintiff's Misappropriation Claim Must be Dismissed Because
It is Preempted by the Copyright Law and
Fails to Satisfy the Bare Minimum Pleading Requirements.................................................... 20

A.    Plaintiff's Claim for Misappropriation is Preempted By The Copyright Law ............. 20

B.    Plaintiff's Claim for Misappropriation Fails To Meet The Bare Minimum Pleading
       Requirement to Qualify For the "Hot News" Exception To Preemption Under
       Copyright Law ........................................................................................................... 21

       1.    Defendant's Use Of Factual Financial News Information Does Not Constitute
              Free Riding On Plaintiff's Efforts........................................................................ 22

       2.    Defendant's Use Of Factual Financial News Information Does
              Not So Reduce The Incentive To Produce Plaintiff's Newsfeed
              That Its Existence Is Threatened......................................................................... 23

CONCLUSION............................................................................................................................. 25

1587416A03121007

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Haley*,
460 F. Supp. 40 (S.D.N.Y. 1978)....................................................................13, 17

*American Direct Mktg., Inc. v. Azad Intl.*,
783 F. Supp. 84 (E.D.N.Y. 1992) ........................................................15

*Anti-Monopoly, Inc. v. Hasbro, Inc.,*
94 Civ. 2120, 1996 U.S. Dist. LEXIS 2684, at *6 (S.D.N.Y. March 7, 1996)........9

*Artemi Ltd., v. Safe-Strap Co., Inc.*,
No. 03 Civ. 03525, slip op., (D.N.J. Aug. 31, 2004) ............................................15

*Bell Atl. Corp. v. Twombly*,
127 S. Ct. 1955 (2007)...........................................................................5

*Bell v. Blaze Magazine*,
99 Civ. 12342, 2001 U.S. Dist. LEXIS 2783 (S.D.N.Y. March 16, 2001)............10

*Boyle v. Stephens, Inc.*,
97 Civ. 1351, 1998 U.S. Dist. LEXIS 1968 (S.D.N.Y.  Feb. 25, 1998)................16

*Broadcast Music, Inc. v. Hearst/ABC Viacom Entm't. Servs.*,
746 F. Supp. 320, 329 (S.D.N.Y. 1990)..................................................................6

*Buckman v. Citicorp*,
95 Civ. 0773, 1996 U.S. Dist. LEXIS 891 (S.D.N.Y. Jan. 30, 1996),
*aff'd,* 101 F.3d 1393 (2d Cir. 1996)......................................................................10

*Cantor v. NYP Holdings, Inc.*
51 F. Supp.2d 309 (S.D.N.Y. 1999).......................................................................19

*CBS Broad. Inc. v. ABC, Inc.*,
02 Civ. 8813, 2003 U.S. Dist. LEXIS 20258 (S.D.N.Y. Jan. 14, 2003)........*Passim*

*Colonel A. Adams v. Warner Bros. Pictures Network*,
05 Civ. 5211, 2007 U.S. Dist. LEXIS 47448 (E.D.N.Y. June 29, 2007) ..............10

*Davies v. Bowes*,
209 F. 53 (S.D.N.Y. 1913), *aff'd*, 219 F. 178 (2d Cir. 1914) ...............................10

*Encyclopedia Brown Prods. v. Home Box Office, Inc.*,
No. 91 Civ. 4092, 1994 U.S. Dist. LEXIS 21372 (S.D.N.Y. Oct. 15, 1998) ..5, 6, 7

iii

*Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*,
499 U.S. 340, 111 S. Ct. 1282 (1991)..........................................................9, 11, 12

*Financial Info., Inc. v. Moody's Investors Serv., Inc.*,
808 F.2d 204 (2d Cir. 1986)...........................................................................*Passim*

*Greenbie v. Noble*,
151 F. Supp. 45 (S.D.N.Y. 1957).........................................................................17

*Hart v. Dan Chase Taxidermy Supply Co., Inc.*,
86 F.3d 320 (2d Cir. 1996)............................................................................15, 16

*Hoehling v. Universal City Studios, Inc.*,
618 F.2d 972 (2d Cir. 1980).................................................................................21

*International News Service v. Associated Press*,
248 U.S. 215, 39 S. Ct. 68 (1918)........................................................................12

*Keane Dealer Services Inc. v. Harts*,
968 F. Supp. 944 (S.D.N.Y. 1997).........................................................................6

*Knitwaves v. Lollytogs, Ltd.*,
71 F.3d 996 (2d Cir. 1995)..................................................................................10

*Kregos v. Associated Press*,
3 F.3d 656 (2d Cir. 1993) ......................................................................12, 13, 20

*Matthew Bender & Co., Inc. v. Kluwer Law Book Publishers, Inc.*,
672 F. Supp. 107 (S.D.N.Y. 1987)..................................................................13, 15

*Morrison v. Solomons*,
494 F. Supp. 218 (S.D.N.Y. 1980).................................................................*Passim*

*Morse v. Fields*,
127 F. Supp. 63 (S.D.N.Y. 1954).........................................................................11

*New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*,
89 F. Supp. 2d 527 (S.D.N.Y. 2005), *aff'd* 497 F.3d 109 (2d Cir. 2007)..............16

*Oxford Book Co., Inc. v. College Entrance Book Co., Inc.*,
98 F.2d 688 (2d Cir. 1938)..................................................................................18

*Sandberg and Sikorski Corp. v. Andin Int'l, Inc.*,
98 Civ. 2890, 98 Civ. 6450,
1999 U.S. Dist. LEXIS 5696 (S.D.N.Y. April 9, 1999) ........................................19

iv

*Scholastic, Inc. v. Stouffer*,
124 F. Supp. 2d 836 (S.D.N.Y. 2000)....................................................................20

*Tabachnik v. Professor Bruce Dorsey*,
04 Civ. 9865, 2005 U.S. Dist. LEXIS 14267 (S.D.N.Y. July 15, 2005) ...............10

*The McGraw-Hill Companies, Inc. v. International Sec. Exch., Inc.*,
05 Civ. 112 and 05 Civ. 4954, 2005 U.S. Dist. LEXIS 18674 (S.D.N.Y. Sept. 1,
2005), *aff'd, Dow Jones & Co., v. Int'l Sec. Exch., Inc.*, 451 F.3d 295 (2d Cir.
2006) ......................................................................................................................21

*The Nat'l Basketball Ass'n v. Motorola, Inc.*,
105 F.3d 841 (2d Cir. 1997)...................................................................19, 21, 22

*Torah Soft Ltd. v. Drosnin*,
136 F. Supp. 2d 276 (S.D.N.Y. 2001)............................................................15, 16

*Warner Bros. Inc. v. American Broad. Cos., Inc.*,
720 F.2d 231 (2d Cir. 1983)...................................................................................10

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*,
210 F. Supp. 2d 147 (E.D.N.Y. 2002), *aff'd*, 354 F.3d 112 (2d Cir. 1994)............9

## STATUTES

Fed. R. Civ. P. 12(b)(6) ..........................................................................................5

17 U.S.C. § 102(b) ..................................................................................................16

## OTHER AUTHORITIES

Nimmer on Copyright, Section 13.03 B [2] (2007) ..............................................11

Marc A. Lieberstein (MAL 7116)
Barry M. Benjamin (BMB 7350)
**DAY PITNEY LLP**
7 Times Square
New York, New York 10036
Phone: (212) 297-5800
Fax: (212) 916-2940

*Attorneys for Defendant,*
*Trade The News, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THEFLYONTHEWALL.COM, INC.,<br><br>          Plaintiff,<br><br>v.<br><br>TRADE THE NEWS, INC.,<br><br>          Defendant. | Civil Action No. 07 CV 9612 (CM)(GWG)<br><br>**DEFENDANT'S<br>MEMORANDUM OF LAW IN SUPPORT<br>OF MOTION TO DISMISS** |

Defendant Trade the News, Inc. ("TTN" or "Defendant"), by its attorneys Day Pitney LLP, respectfully submits this memorandum of law in support of its Motion to Dismiss, and for such other and further relief as this Court may deem just and proper.

**PRELIMINARY STATEMENT**

The Complaint asserts two purported causes of action, for copyright infringement and for misappropriation, yet fails to plead the necessary elements of any actionable claim as a matter of law.   Plaintiff Theflyonthewall.com's ("The Fly" or "Plaintiff") claims are also equitably

estopped because Plaintiff has been aware of TTN's alleged wrongful conduct for over three and half years, but nevertheless took no steps to stop it.

Substantively, Plaintiff's copyright claim fails to state a claim upon which relief can be granted because Plaintiff does not allege that TTN copied any copyrightable works. Rather, it is only factual news snippets which Plaintiff alleges TTN copied, and these merely consist of factual news items that were published by Plaintiff utilizing common financial industry words and short phrases. Just as news and facts are not copyrightable as a matter of law, nor are short words and phrases that comprise common industry jargon, which are also denied copyright protection under the merger doctrine.

Plaintiff's misappropriation claim is also deficient on its face, and must be dismissed. First, because the alleged misappropriated material falls under the rubric of the Copyright Act, the misappropriation claim is preempted even though the alleged misappropriated material is not copyrightable. And, second, in each instance of alleged misappropriation, TTN did not take anything of value from The Fly because TTN's publication of the factual news came <u>after</u> The Fly published its news. Such information is not the proper subject of a misappropriation claim. It also does not qualify for protection under the "hot news" exception because the Complaint establishes that Plaintiff has suffered no injury as a result of TTN's allegedly wrongful conduct, *i.e.*, Plaintiff fails to plead a single instance of any TTN misappropriation that took place prior to Plaintiff's publication and Plaintiff took no steps to stop TTN despite knowing about TTN's conduct for over three and a half years.

In sum, Plaintiff's Complaint fails to make out any actionable cause of action, and must therefore be dismissed in its entirety.

2

## **FACTUAL BACKGROUND**

TTN invests significant financial and human resources in its business of generating real-time financial market-based information.  TTN, established in 1996, is the first company to offer live-audio breaking-news analysis to financial market professionals in an interactive IP-based closed circuit environment.  Declaration of Joseph Perrone, Jr., dated December 10, 2007 ("Perrone Decl.") ¶ 2.  Currently, TTN broadcasts to more than 2,500 clients worldwide including major trading houses and money management institutions, as well as private traders. *Id.* ¶ 3.  TTN is widely praised for its global coverage of financial news.  *Id.  Barron's*, one of the world's leading business publications, has called TTN "a valuable tool for high-end active investors and managers" and *Trader's Magazine UK & Germany* has written that "[i]ndividual traders and financial institutions . . . will be hard pressed to find anything that can beat this product." *Id.*

TTN offers a number of services to its subscribers, including (i) a voice module network (known as "hoot") which is for professional traders who require instantaneous responses to specific financial market inquiries; (ii) its webpage (http://www.tradethenews.com) which features an overview of current market events and stories; (iii) a Weekly Market Calendar which highlights important events of the week, including major data releases and a list of all companies reporting each day of the week; (iv) The Morning Report which provides consumers with a quick review of the previous day's U.S. market analysis and highlights company reports issued after the close; and (v) its News Station 5 software which enables visitors to download market reports and data. *Id.* ¶ 2.

Plaintiff also generates real-time financial news and market research to its subscribers. Decl. of Barry M. Benjamin, Exh. A, Cpt. ¶¶ 9-10.

On June 3, 2004, Plaintiff demanded that TTN immediately stop disseminating factual market information and data that appeared on The Fly's web site, alleging that TTN copied The Fly's copyrighted news information. Cpt. ¶ 19; Perrone Decl. ¶ 6, Exh. A.  TTN did not comply because the information in question consisted of mere factual news and financial information. Perrone Decl. ¶¶ 7-8.  For nearly three and a half years following The Fly's demand to TTN, The Fly took no action to enforce its alleged copyrights against TTN, or any other rights that The Fly may have to the factual news TTN allegedly took from The Fly.  *Id.* ¶ 8.  Indeed, all that has happened since June 3, 2004 is that Lehman Brothers, Merrill Lynch and Morgan Stanley (the "Securities Firms") have filed suit against The Fly in this District (06 Civ. 4908, Daniels, J.) alleging that The Fly has "*systematically and impermissibly accessed the Securities Firms' proprietary equity research and — free riding on these significant research efforts — rushes to the market with the intent and effect of undermining the Firm's enormous investments in providing clients and other authorized recipients with exclusive and time-sensitive financial market analysis. For a time, The Fly reproduced these reports verbatim.*"  *Id.* ¶ ¶9-10, Exh. B (emphasis added).

In an almost verbatim copy of the Securities Firms' Complaint against The Fly, The Fly alleges in its Complaint against TTN that TTN "*systematically accesses its newsfeed and, free riding on The Fly's significant news gathering and market research efforts, rushes to the market with the intent and effect of undermining The Fly's investment in providing its subscribers with newsfeed containing exclusive and time-sensitive financial news and market analysis.*"  Cpt. ¶ 1; Perrone Decl. ¶10, Exh. B (emphasis added).

Judge Daniels has already dismissed The Fly's counterclaims in the Securities Firms' case as baseless.  This Court should find The Fly's claims in this action similarly baseless.

## ARGUMENT

## THE COMPLAINT FAILS TO MEET THE BARE MINIMUM PLEADING REQUIREMENTS TO MAKE OUT A COPYRIGHT OR MISAPPROPRIATION CLAIM

The Supreme Court recently redefined the standard for granting a motion to dismiss in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007). It held that a complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. To survive a motion to dismiss, a complaint must be sufficient to "raise a right to relief above the speculative level." *Id.* at 1965. According to the Supreme Court, if a complaint does not move from the "conceivable" category to the "plausible" category, it must be dismissed. *Id.* at 1974.

## POINT I

### Plaintiff's Claims Should Be Dismissed Because They Are Barred By The Doctrine Of Equitable Estoppel

Plaintiff first communicated its supposed objections to Defendant's conduct on June 3, 2004, over three and a half years ago. Cpt. ¶ 19. At that time, TTN ignored Plaintiff's objections because the Plaintiff's claims appeared then, as they do now, to be utterly baseless. Perrone Decl. ¶¶ 7-8. Over the years since that time, Plaintiff took no steps to stop TTN other than making a few snide comments to Defendant's principal. *Id.* ¶ 8. Plaintiff's failure to act in response to TTN's alleged and ongoing wrongful conduct, despite knowing about and objecting to such alleged conduct, serves to estop Plaintiff from pursuing the instant lawsuit against TTN. *Encyclopedia Brown Prods. v. Home Box Office, Inc.,* No. 91 Civ. 4092, 1994 U.S. Dist. LEXIS 21372, at *39-40 (S.D.N.Y. Oct. 15, 1998).

5

The doctrine of equitable estoppel is utilized by courts to prevent a plaintiff, like the Plaintiff here, from asserting claims which the plaintiff itself knows are baseless, and when the plaintiff took specific action, or no action at all, which action or omission led the defendant to believe the plaintiff had no claim, and so defendant carried on with its business.  Equitable estoppel "applies both in law and in equity to deny a party *the right to plead* or prove an otherwise important fact – here, the act of infringement – because of something he has done or omitted to do."  *Broadcast Music, Inc. v. Hearst/ABC Viacom Entm't. Servs.*, 746 F. Supp. 320, 329 (S.D.N.Y. 1990) (emphasis supplied).

To make out the equitable estoppel defense TTN must show the following elements:   1) Plaintiff knew of TTN's allegedly wrongful conduct; 2) Plaintiff intended that its conduct be acted upon or Plaintiff acted in a way that the Defendant had a right to believe it was so intended; 3) Defendant was ignorant of the true facts; and 4) Defendant relied on Plaintiff's conduct to his detriment. *Encyclopedia Brown Prods.,* 1994 U.S. Dist. LEXIS 21372, at *39-40 (dismissing claim for copyright infringement upon defense of equitable estoppel); *see also, Keane Dealer Servs. Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997), *citing Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 456 F. Supp. 531, 535 (S.D.N.Y. 1977).

 Here, all the elements for applying equitable estoppel are present:

**A.     Plaintiff Knew Of TTN's Allegedly Wrongful Conduct**

It is undisputed that Plaintiff had actual knowledge of Defendant's alleged wrongful conduct since, at least June 2004.  Indeed, Plaintiff admits in its Complaint that on June 3, 2004 it complained to Defendant about the precise conduct Plaintiff now (baselessly) asserts is actionable.  Cpt. ¶ 19.

6

**B.**     **Plaintiff Intended That Its Conduct Be Acted Upon And/Or Plaintiff Acted In A Way That The Defendant Had A Right To Believe It Was So Intended**

With respect to the second factor, despite knowing about Defendant's conduct for three and a half years, and complaining to Defendant during that time, Plaintiff took no action to stop Defendant's conduct now alleged to be actionable in the Complaint.  Plaintiff's acquiescence to Defendant's conduct over the last three and a half years led Defendant to reasonably and justifiably believe that Plaintiff would not pursue the copyright infringement or misappropriation claims now alleged in the Complaint.  Perrone Decl. ¶ 8; *see Encyclopedia Brown Prods.,* 1994 U.S. Dist. LEXIS 21372 (citations omitted).

**C.**     **Defendant Was Ignorant Of The True Facts**

As for the third factor, TTN had no knowledge of the basis for Plaintiff's claim.  Indeed, just the opposite, TTN believed Plaintiff's copyright and misappropriation claims were then, and are now, baseless.  Perrone Decl. ¶ 7.  Plaintiff's copyright infringement claim has no merit because the material in question consists of factual news and commonly used financial industry short phrases which are not protectable by copyright.  *CBS Broad. Inc. v. ABC, Inc.,* 02 Civ. 8813, 2003 U.S. Dist. LEXIS 20258, at *7 (S.D.N.Y. Jan. 14, 2003).  Plaintiff's misappropriation claim also has no merit because the information allegedly taken from Plaintiff is not owned by Plaintiff, as TTN and others get the same or similar factual news information from the same or similar types of sources as Plaintiff, *i.e.* no value was taken from Plaintiff. *Financial Info., Inc. v. Moody's Investors Serv., Inc*., 808 F.2d 204, 206-07 (2d Cir. 1986). Accordingly, Defendant had, and currently has, no knowledge of any information that would support Plaintiff's claims.

**D.**    **Defendant Relied On Plaintiff's Conduct To His Detriment**

For the last factor, Defendant detrimentally relied on Plaintiff's three-and-a-half-year period of inaction and acquiescence by continuing to invest significant sums of money to produce and exploit the financial news through its IP-based closed-circuit environment.  Perrone Decl. ¶ 8.

Accordingly, the allegations in the Complaint itself fully support application of the doctrine of equitable estoppel to bar Plaintiff's claims and to dismiss the lawsuit.

**POINT II**

**A Stay of this Case Should Be Considered Because**
**A Cloud Hovers Over Plaintiff's Claims – Plaintiff's**
**<u>Copyrighted Works Are Alleged To Have Been Copied From A Third Party</u>**

On June 26, 2006, the Securities Firms filed their complaint against The Fly for the "systematic misappropriation and blatant copyright infringement of their proprietary, analytical equity research reports."  *See* Perrone Decl. ¶¶ 9-10 , Exh. B.  According to the Securities Firms, The Fly systematically and impermissibly accessed the Securities Firms' proprietary equity research to generate The Fly's newsfeeds and to undermine the Securities Firms' enormous investments in providing clients and other authorized recipients with exclusive and time-sensitive financial market analysis.  It is alleged that The Fly during certain times would reproduce the Securities Firms' reports verbatim.  Defendant believes that the Securities Firms' reports are the same reports, and same news information, The Fly now relies on as the basis for the current lawsuit against TTN.

In view of the current cloud over Plaintiff's title in its alleged copyrighted works, the Court should consider staying this matter pending resolution of the lawsuit filed by the Securities Firms that specifically and directly contest the validity of the copyrights alleged as the basis of

8

plaintiff's claims in this case. *Anti-Monopoly, Inc. v. Hasbro, Inc.,* 94 Civ. 2120, 1996 U.S. Dist. LEXIS 2684, at *6 (S.D.N.Y. March 7, 1996).

## POINT III

### Plaintiff's Copyright Claim Should Be Dismissed Because
### Plaintiff Has Not Alleged Copying Of Any Valid Copyrightable Works

Plaintiff's Complaint fails to satisfy the required elements for setting forth a sustainable copyright claim.  Plaintiff's alleged copyrights consist of nothing more than factual news information, comprised of snippets and squibs of a few short words and phrases.   These are not protected by the Copyright Act.  The fact that Defendant's works allegedly contain common errors is irrelevant.  Even if Plaintiff owned a valid copyright, under the copyright substantial similarity test, a trier of fact would be required to compare only copyrightable elements after stripping out non-copyrightable elements.  In Plaintiff's Complaint there is no allegation of copying any copyrightable elements.  Indeed, under the merger doctrine, because there are only a limited number of ways to express the factual news information in Plaintiff's allegedly copyrighted works, Defendant cannot be liable for copyright infringement.

To establish a copyright infringement claim, both of the following must be established: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 111 S. Ct. 1282 (1991).  To establish the second element, a claimant must demonstrate both (1) actual copying of the plaintiff's work by the defendant, and (2) illegal copying, *i.e.*, that a substantial similarity exists between the protectable elements of the plaintiff's work and the defendant's work.  *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F. Supp.2d 147, 159 (E.D.N.Y. 2002), *aff'd* 354 F.3d 112 (2d Cir. 2003), *quoting Fisher-Price, Inc. v. Well-Made Toy Mfg., Corp.*, 25 F.3d 119, 122-23 (2d Cir. 1994).  If a work contains both protectable and unprotectable elements, a court

9

should review only whether the protectable elements, standing alone, are substantially similar. *Knitwaves v. Lollytogs, Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995).

The determination of whether works are substantially similar may be decided by a court as a matter of law. *Warner Bros. Inc. v. American Broad. Cos., Inc.*, 720 F.2d 231, 240 (2d Cir. 1983). Courts in this District have not hesitated to grant defendants' motions to dismiss under F.R.C.P. 12(b)(6) if they determine that as a matter of law, no reasonable jury could find that any alleged similarities between two works relate to protectable elements of the works, or that no reasonable jury could find two works substantially similar. *Buckman v. Citicorp*, 95 Civ. 0773, 1996 U.S. Dist. LEXIS 891, at *3 (S.D.N.Y. Jan. 30, 1996), *aff'd* 101 F.3d 1393 (2d Cir. 1996) (granting defendant's F.R.C.P. 12(b)(6) motion to dismiss where court concluded any similarities pertain to non-protectable elements of plaintiff's work); *Colonel A. Adams v. Warner Bros. Pictures Network*, 05 Civ. 5211, 2007 U.S. Dist. LEXIS 47448 (E.D.N.Y. June 29, 2007) (same); *Tabachnik v. Professor Bruce Dorsey*, 04 Civ. 9865, 2005 U.S. Dist. LEXIS 14267 (S.D.N.Y. July 15, 2005) (same); *Bell v. Blaze Magazine*, 99 Civ. 12342, 2001 U.S. Dist. LEXIS 2783 (S.D.N.Y. March 16, 2001) (same).

## A.    Plaintiff's Alleged Infringed Works Consist of Nothing More Than Mere Factual News Not Protected By The Copyright Act

Plaintiff alleges that the information it posts on its website and disseminates to its subscribers reports news and facts from Wall Street and other financial and third-party sources. Cpt. ¶ 10. Because the law has long been clear and well-settled that facts and news are not copyrightable, Plaintiff's copyright infringement claim fails as a matter of law. *Davies v. Bowes*, 209 F. 53 (S.D.N.Y. 1913), *aff'd* 219 F. 178 (2d Cir. 1914) (holding that no copyright on news exists and that "there can be no piracy of facts, because facts are public property"); *Morrison v.*

10

*Solomons*, 494 F. Supp. 218, 226 (S.D.N.Y. 1980) (citation omitted) (noting that cases in Second Circuit "make clear that factual information is in the public domain").

Plaintiff alleges that Defendant copied portions of Plaintiff's copyrighted newsfeed. Cpt. ¶¶ 18, 25. While Plaintiff's newsfeed on the whole may be copyrightable in its entire selection and arrangement, the individual news snippets and squibs in the newsfeed, by themselves, are not copyrightable because they merely contain commonly-worded phrases reporting on news and factual events in the financial industry, *e.g.*, actions taken by financial firms with regard to the firms' opinions about the future direction of publicly-traded stocks. Cpt. ¶ 25. Plaintiff does not allege Defendant copied the entire newsfeed, only selected short squibs. But Plaintiff admits that its squibs are taken directly from "track[ing] the latest industry rumors" and "breaking news and analyst comments disseminated by Wall Street trading desks." Cpt. ¶ 10. Accordingly, Plaintiff's newsfeed squibs are composed only of news and factual information which Plaintiff obtains from a third-party source. As a matter of law, not only does Plaintiff not own this information, but there is also nothing copyrightable about such newsfeed squibs. *Morrison*, 494 F. Supp. at 226.

To the extent that a valid copyright exists, if any, it lies solely in Plaintiff's style and form of the presentation of the compiled selection of facts in its newsfeed, not the individual factual squibs or the news itself. *Morse v. Fields*, 127 F. Supp. 63 (S.D.N.Y. 1954). Therefore, "if the selection and arrangement [of the facts] are original, these elements of the work are eligible for copyright protection. No matter how original the format, however, the facts themselves do not become original through association." *Feist Pubs., Inc.* 499 U.S. at 349, 111 S. Ct. at 1289-1290; *see also* Nimmer Section 13.03 B [2]) ("*Feist* stands for the proposition that even admitted literal copying is not actionable when limited to unoriginal expression"). As

11

further held in *Feist*, "a copyright in a factual compilation is thin, notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement." *Feist Pubs., Inc.,* 499 U.S. at 349, 111 S. Ct. at 1289-1290*; Kregos v. Associated Press*, 3 F.3d 656, 664 (2d Cir. 1993).

Here, since Plaintiff admits that its copyright is comprised of facts, its copyright is very thin and limited as to the precise compilation of these facts in its entire newsfeed, not the individual factual squibs themselves. Because Plaintiff's Complaint does not allege Defendant copied the entire newsfeed but only brief squibs of newsfeed facts, Defendant cannot be liable for copyright infringement as a matter of law. *International News Service v. Associated Press*, 248 U.S. 215, 234, 39 S. Ct. 68, 70-71 (1918); *Feist Pubs., Inc.,* 499 U.S. at 349, 111 S. Ct. at 1289-1290; *Financial Info.,* 808 F.2d at 206-07; *Morrison*, 494 F. Supp. at 226.

**B.     Just As News and Facts Are Not Copyrightable, Nor Are Short Words and Phrases, Nor Is Financial News Jargon Common In the Industry, Which Is All That The Complaint Alleges**

The "works" Plaintiff alleges TTN has copied consist of nothing more than common short words and phrases, and no copyright can attach to common short words and phrases. Moreover, under the copyright merger doctrine, Plaintiff's claim fails as a matter of law because the "works" consist only of industry jargon, and only a small, limited number of ways exist to express the messages Plaintiff and TTN seek to convey. No copyright can exist in such common industry jargon when the methods of expressing the ideas are so limited.

**1.     Short Words and Phrases are not Copyrightable**

Copyright law does not protect "the mere duplication of short or ordinary phrases, commonly used terms, names, titles or slogans." *CBS Broad. Inc.,* 2003 U.S. Dist. LEXIS

12

20258, at *8; *Alexander v. Haley*, 460 F. Supp. 40, 46 (S.D.N.Y. 1978) ("phrases and expressions conveying an idea that can only be, or is typically, expressed in a limited number of stereotyped fashions" are not subject to copyright protection).

Usage of common terms of art and industry jargon has been held to have insignificant probative value on the issue of copying. *Morrison,* 494 F. Supp. at 223 (noting that "many of the correspondences alleged to violate the copyright statute consisted merely of commonplace terms clearly inherent in and required by the necessity of the subject being taught"); *see, e.g.*, *Matthew Bender & Co., Inc. v. Kluwer Law Book Publishers, Inc.*, 672 F. Supp. 107, 111 (S.D.N.Y. 1987) (plaintiff could not claim a legally protectable interest in such terms because "these terms, or synonyms for them, are the only way of conveying the desired information"). When only a limited number of ways exist to communicate relevant information, no substantial similarity can be found. *Kregos*, 3 F. 3d at 664 (holding no substantial similarity as matter of law despite finding that six of ten statistics on the parties' pitching forms were identical because "much of the similarity between the AP and Kregos forms is necessitated because there are limited number of [pitching] statistics generally considered outcome-predictive by those familiar with the sport").

In *Financial Info., Inc. v. Moody's Investors Serv., Inc*., the plaintiff's Daily Bond Cards which reported all municipal redemptions by listing the name of the issuer, a description of the bond (e.g., water, sewage, issuer, etc.), the date of redemption, the redemption agent, the identification of the specific bonds being called and the redemption price were held not copyrightable because there was "insufficient proof of independent creation." 808 F.2d at 206-07.

Plaintiff has listed only individual brief squibs from its newsfeeds that it alleges Defendant copied. Cpt. ¶ 25. But these squibs are no more than a sentence in length per newsfeed and merely consist of short words and phrases containing financial industry-specific language and jargon. For example, Plaintiff states that on May 21, 2007 it published a newsfeed stating that "Berry Petroleum-BRY initiated with a Buy & $40 target@CRTC." Cpt. ¶ 25. This squib consists of a short phrase comprised entirely of industry terminology which is not protected by copyright, such as "BRY" (the ticker name for the company Berry Petroleum), "initiated with a Buy," and "$40" (factual reporting of a stock price).

Similarly, Plaintiff states that on July 16, 2007 it published a newsfeed stating that "Activision-ATVI downgraded to Hold from Buy@GABE". Cpt. ¶ 25. Like the previous example, Plaintiff's newsfeed consists solely of noncopyrightable short words and phrases , such as the "ATVI" (the ticker name for the company Activision), "downgraded," "hold", and "buy".

Since the words and phrases in Plaintiff's newsfeed are terms of art in the financial industry, Plaintiff does not have a monopoly over their usage, and hence, cannot claim copyright infringement against Defendant. *See Financial Info.,* 808 F.2d at 206-07; *Morrison,* 494 F. Supp. at 226 (citation omitted).

Consequently, Defendant's use of common financial industry words and phrases similar or identical to those used by Plaintiff is necessitated by the fact that both parties produce a similar publication for a similar audience. Therefore, as a matter of law the short words and phrases alleged to have been copied are not protected by the Copyright Act and the infringement claim should be dismissed. *CBS Broad. Inc.,* 2003 U.S. Dist. LEXIS 20258.

14

### 2.     Under the Merger Doctrine, Common Industry Jargon Is Not Copyrightable

Plaintiff has also failed to allege actionable copyright infringement because under the merger doctrine no copyright can exist where there are only a few sensible methods to express the idea.  The snippets and squibs on Plaintiff's website contain only non-copyrightable words and phrases because the expressions of the facts stated have merged with the ideas of the facts, and only a few sensible ways exist to present these facts.

It is fundamental copyright law that only the expression of an idea, and not the idea itself, is protectable; however, it is also fundamental copyright law that "even expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself."  *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 285 (S.D.N.Y. 2001) (quoting *Baker v. Seldon*, 101 U.S. 99, 25 L.Ed. 841 (1879)) (granting summary judgment in favor of defendants).  Notably, the merger of an idea and its expression "which necessarily results from the fact that the common idea is only capable of expression in more or less stereotyped form will preclude a finding of actionable similarity."  *Hart v. Dan Chase Taxidermy Supply Co., Inc.*, 86 F. 3d 320, 322 (2d Cir. 1996) (citation omitted).  For example, in *American Direct Mktg. Inc. v. Azad Intl.*, the court found that the close similarity of two lists regarding the dangers of dental plaque "is caused by the common desire to use the shortest term possible for a simple piece of information.  In such cases, the exact expression used to relay the information is not protectable by copyright under the merger doctrine."  783 F. Supp. 84, 95 (E.D.N.Y. 1992).  *See also Matthew Bender & Co., Inc.*, 672 F. Supp. at 110 (finding merger between expression and idea where, practically, number of ways to organize information in chart in useful and accessible manner is limited); *Artemi Ltd., v.*

15

*Safe-Strap Co., Inc.*, No. 03 Civ. 03525, slip op. at 10 (D.N.J. Aug. 31, 2004) (copyright does not protect "forms of expression dictated solely by functional considerations") (citation omitted).

In a similar case to this one, the merger doctrine was applied in *New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 389 F. Supp. 2d 527, 542 (S.D.N.Y. 2005), *aff'd* 497 F.3d 109 (2d Cir. 2007). The *New York Mercantile Exch.* court held that because plaintiff's "settlement prices are the actual prices and are the only way to express the idea of a settlement price stated in numbers – the expression of that price is therefore not sufficiently distinct from the idea of that price to warrant copyright protection." *Id. at* 542; s*ee also Boyle v. Stephens, Inc.,* 97 Civ. 1351, 1998 U.S. Dist. LEXIS 1968, at *14 (S.D.N.Y. Feb. 25, 1998) (dismissing claim of infringement and holding that "under the merger doctrine, plaintiff's copyright does not preclude others from describing such fund characteristics as the availability of individual specific 'series' and the shifting investment composition").

Here, the merger doctrine must apply to the "time-sensitive financial news and market analysis" conveyed by Plaintiff's website because the expression of such information will necessarily be substantially similar to all of Plaintiff's competitors' reporting of the same news. *Hart,* 86 F. 3d at 322. After all, only a limited number of ways exist to say that an analyst has raised or lowered his or her opinion of a particular company's stock as well as that analyst's new target price for the stock. *See, e.g., Torah Soft Ltd.*, 136 F. Supp. 2d at 285 (the merger doctrine is "particularly relevant when efficiency concerns may so narrow the practical range of choice as to make only one or two forms of expression workable options") (citation omitted).

If TTN were precluded from using industry jargon and terminology and quotations from the financial firms to report Wall Street news, then Plaintiff would have a monopoly over the idea itself, and the Copyright Act does not extend so far. *See Id.*; 17 U.S.C. § 102(b). Because

16

only a limited number of ways exist to express the Plaintiff's ideas, as a matter of law Plaintiff's "works" are not copyrightable, and here, not infringed under the merger doctrine.

## C.    The Alleged Copying of "Mistakes" is of No Moment

Plaintiff attempts to show that copying occurred by identifying errors of fact that appeared in both its copyrighted newsfeeds and on Defendant's website. But the law is clear that the existence of common errors does not justify a conclusion of a copyright violation. Errors in common between a plaintiff's and a defendant's works can be satisfactorily explained by their derivation from third-party sources. *Morrison*, 494 F. Supp. at 223-224. In the absence of widespread copying of copyrightable subject matter, the existence of errors in common does not justify a conclusion of copyright violation. *Id.*; *Greenbie v. Noble*, 151 F. Supp. 45, 68 (S.D.N.Y. 1957). This is especially true where competitors obtain information from common sources. *Alexander*, 460 F. Supp. at 45 (noting that no infringement exists where common sources exist for alleged similarities).

The Complaint alleges the Plaintiff and Defendant are competitors in the financial news reporting industry. Cpt. ¶¶ 3, 9, 14. As competitors, both obtain their information from the same or similar financial industry sources. *See* Perrone Decl. ¶ 11. Where both Plaintiff's material and Defendant's material contain identical information or misinformation, no support exists for a claim of infringement since both parties obtained the information from common sources. *See id.*

Notably, several of the alleged errors in common between Plaintiff's news squibs and Defendant's are also found in a third-party's news squibs. On May 29, 2007, Briefing.com, another website providing market analysis for investors and traders, and a competitor of both Plaintiff's and Defendant's, published the same erroneous information as Plaintiff and Defendant, stating that "LTD downgraded to Equal Weight from Overweight at JPMS". Perrone

17

Decl. ¶ 12, Exh. C.  Briefing.com also reported the same erroneous information as Plaintiff and Defendant on September 11, 2007 and September 25, 2007.  *See* Perrone Decl. ¶ 13, Exh. D and ¶ 14. Exh. E.

The fact that another company in the financial news reporting industry made the same errors as Plaintiff and Defendant highlights that competing real-time financial reporting companies obtain their information and misinformation from common sources.  Therefore, any mistakes in common between Plaintiff and Defendant cannot create an inference of copying.  *Id.* ¶ 15.  In *Oxford Book Co., Inc. v. College Entrance Book Co., Inc.*, where plaintiff relied upon "so-called common errors of facts" appearing both in its book and defendant's book to support its claim of infringement, the court noted:

> There are, indeed some [common errors of fact]; enough to make it clear that the defendants Pikholtz and Fraser adopted for their own use either erroneous or at least somewhat misleading statements in regard to historical facts appearing in the copyrighted book.  But that only served to show use of the plaintiff's book and not necessarily that what they wrote infringed the copyright, <u>for historical facts are not copyrightable per se nor are errors in fact</u>.  The plaintiff's book was designed to convey information to the reader.  The defendant authors were as free to read it as anyone else and to acquire from it such information as they could.  <u>They could, indeed, with equal right obtain such misinformation as it contained, for the copyright gave no monopoly over the contents of the book</u>.

98 F. 2d 688, 691 (2d Cir. 1938) (emphasis added).  Therefore, even if Defendant copied factual information or misinformation from Plaintiff's newsfeed, such copying does not amount to infringement because the copied facts are not subject to protection under the Copyright law.  *Id.*

### D.  No Substantial Similarity Exists Between The Copyrightable Elements Of Plaintiff's Newsfeed and Defendant's Works

Plaintiff's Complaint is nothing more than an attempt to assert copyright protection in a factual compilation, *i.e.*, its newsfeed.  But if the Court deems Plaintiff's copyrights valid, in order to ascertain whether actionable substantial similarity exists between Plaintiff's and

18

Defendant's works, the comparison must exclude non-copyrightable elements of Plaintiff's work. *CBS Broad. Inc.,* 2003 U.S. Dist. LEXIS 20258, at *11 (citing Nimmer Section 13.03 E [2], pages 13-83 to 13-84); *Sandberg and Sikorski Corp. v. Andin Int'l, Inc.*, 98 Civ. 2890, 98 Civ. 6450, 1999 U.S. Dist. LEXIS 5696, at *4-5 (S.D.N.Y. April 9, 1999). And, here, once the Court excludes the non-copyrightable individual factual news squibs, which the Court must do in this case when analyzing the two works under a substantial similarity analysis, no actionable copying can be found, and the copyright claim must be dismissed. *See, e.g., Cantor v. NYP Holdings, Inc.*, 51 F. Supp. 2d 309, 313-314 (S.D.N.Y. 1999) (excluding non-copyrightable photos and captions from the court's substantial similarity analysis and holding that because defendant did not copy plaintiff's selection and arrangement of the material it did not infringe plaintiff's copyright in his compilation); *The Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F. 3d 841, 847 (2d Cir. 1997) (holding that "[b]ecause the SportsTrax device and AOL site reproduce only factual information culled from the broadcasts and none of the copyrightable expression of the games, appellants did not infringe the copyright of the broadcasts").

Here, the copyrighted material alleged to have been copied consists solely of factual elements and terms of art routinely used in the financial industry. Indeed, only one factual element in each of Plaintiff's newsfeeds listed in Paragraph 25 of the Complaint is alleged to have been copied by Defendant. But, since these factual elements must be excluded from the substantial similarity analysis, and Plaintiff has failed to allege that Defendant copied the style and form of the complete presentation of Plaintiff's newsfeed, Plaintiff fails to satisfy its pleading burden of alleging copyright infringement. Plaintiff makes no allegation of wholesale appropriation of the entire copyrighted newsfeed or that Defendant copied the complete selection and arrangement of any particular newsfeed, which would include Plaintiff's selection and

arrangement of all the facts in the newsfeed.  Accordingly, plaintiff's claim of infringement based solely on non-copyrightable factual words and phrases should be dismissed.  *Id.*

**POINT IV**

**Plaintiff's Misappropriation Claim Must be Dismissed Because It is
Preempted by the Copyright Law and
Fails to Satisfy the Bare Minimum Pleading Requirements**

Plaintiff's claim for misappropriation must be dismissed for two reasons.  First, the misappropriation claim fails because it is preempted by copyright law.  Second, even if not preempted, Plaintiff has failed to plead the bare minimum required for establishing a misappropriation claim.

**A.    Plaintiff's Claim for Misappropriation is Preempted By The Copyright Law**

Plaintiff's misappropriation claim fails and must be dismissed because it is preempted by copyright law.  A misappropriation claim is preempted by § 301 of the Copyright Act "if the subject matter of the state-law right falls within the subject matter of the copyright laws, and the state-law right asserted is equivalent to the exclusive rights protected by federal copyright law." *Kregos*, 3 F.3d at 664 (citation omitted).  Thus "the two criteria for the preemption of state law claims are: (i) whether the particular work in issue falls within the subject matter of copyright" and "(ii) whether the legal or equitable right sought to be protected is equivalent to one of the exclusive rights under the copyright act." *Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 846 (S.D.N.Y. 2000).

Under the first prong of the preemption test, even "uncopyrightable" works are subject to preemption under the Copyright Act if the material alleged to be misappropriated "fall[s] within the subject matter of copyright."  Here, although the alleged misappropriated material is not copyrightable because it consists solely of news and factual information and/or short words and

20

phrases, such material falls within the ambit of that which is preempted by federal copyright law. Indeed, "[c]opyrightable material often contains uncopyrightable elements within it, but Section 301 preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements." *Motorola, Inc.*, 105 F. 3d at 849; *Financial Info., Inc.,* 808 F.2d at 208.

Under the second prong of the preemption test, Defendant must show that the Plaintiff's alleged misappropriated material is the equivalent of subject matter covered by the Copyright Act. Here, where facts "have been deliberately exempted from the scope of copyright protection to vindicate the overriding goal of encouraging contributions to recorded knowledge, the states are pre-empted from removing such material from the public domain" and from permitting state common law claims to be brought under the guise of "misappropriation". *Hoehling v. Universal City Studios, Inc*., 618 F.2d 972, 980 (2d Cir. 1980). Accordingly, the Plaintiff's allegedly misappropriated factual news material satisfies both threshold requirements for federal preemption and the claim for misappropriation should be dismissed.

**B.    Plaintiff's Claim for Misappropriation Fails To Meet The Bare Minimum Pleading Requirement to Qualify For the "Hot News" Exception To Preemption Under Copyright Law**

Misappropriation claims for "hot news" may not be preempted by the Copyright Act because they have been held, under very limited circumstances, to protect a "narrow quasi property right in news, which as facts, may not be copyrighted." *Financial Info., Inc.*, 808 F.2d at 207. *International News Service* has "long been regarded with skepticism by many courts and scholars and [is] often confined strictly to its facts." *The McGraw-Hill Companies, Inc. v. International Sec. Exch., Inc.,* 05 Civ. 112 and 05 Civ. 4954, 2005 U.S. Dist. LEXIS 18674, at *12-13 (S.D.N.Y. Sept. 1, 2005), *aff'd Dow Jones & Co. v. Int'l Sec. Exch., Inc*., 451 F.3d 295 (2d Cir. 2006). This District has noted that "hot news" claims under *INS* "cover[] at most a

21

defendant's copying of information gathered by the plaintiff in order to save the expense of gathering that information itself, and use of that information to compete directly with a product or service offered by the plaintiff." *Id.* (citing *Motorola, Inc.,* 105 F. 3d at 852).

The Second Circuit explained that "hot news" *INS*-like claims are limited to cases where:

> (i) a plaintiff generates or gathers information at a cost; (ii) the information is time sensitive; (iii) a defendant's use of the information constitutes free riding on the plaintiff's efforts; (iv) the defendant is in direct competition with a product or service offered by the plaintiffs; and (v) the ability of other parties to free-ride on the efforts of the plaintiff or others would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened.

*Motorola, Inc.,* 105 F. 3d at 845.

Plaintiff's Complaint does not plead the bare minimum required to fall within the exception of *INS* "hot news" because, under the facts as alleged, reproduction of the factual news and short words and phrases from Plaintiff's newsfeed after its publication does not constitute "free riding" on Plaintiff's efforts, nor does it "so reduce [Plaintiff's] incentive to produce the product or service that its existence or quality would be substantially threatened."

### 1.    Defendant's Use Of Factual Financial News Information Does Not Constitute Free Riding On Plaintiff's Efforts

In *INS*, INS was taking news from the AP-affiliated newspapers published on the east coast and selling that information to the INS-affiliated newspapers on the west coast <u>before</u> the AP could transmit that same information to the west coast.  As a result, the INS-affiliated newspapers were able to publish the "misappropriated" hot news at the same time, and occasionally before, the AP-affiliated papers on the west coast were able to publish it.  *Financial Info., Inc.*, 808 F.2d at 209.

Here, contrary to the pleaded facts in *INS*, Plaintiff fails to allege that Defendant is publishing material from Plaintiff's newsfeeds prior to or simultaneously with Plaintiff's own

publication.   Every alleged misappropriated news item listed in Paragraph 27 of Plaintiff's Complaint confirms that Defendant published the news item <u>after</u> Plaintiff published it. Consequently, Defendant has not misappropriated any "hot news" from Plaintiff.  *Id.*  Plaintiff's news was "hot" when it was published by Plaintiff, but by the time Defendant published the same news it was no longer "hot", and therefore, Defendant could not be "free riding" on Plaintiff because once Plaintiff publishes the information it has already taken advantage of its "competitive edge" to release the information first.   *Id.*

Although the value of some information may be time-sensitive, Plaintiff has failed to show or allege that Defendant misappropriated the news before its value as  "hot news" has passed.   Plaintiff does not allege any lost subscribers, revenue, or any harm to its business. Therefore, this case is vastly different from *INS* in that Plaintiff is not unfairly competing with Defendant nor free-riding or usurping Plaintiff's competitive edge.

**2.     Defendant's Use Of Factual Financial News Information Does Not So Reduce The Incentive To Produce Plaintiff's Newsfeed That Its Existence Is Threatened**

Even if Defendant copied Plaintiff's news, no basis exists for any claim that such copying diminishes the value of Plaintiff's newsfeed because Plaintiff has pled in its own Complaint that it has maintained its competitive edge by always publishing the newsfeed information first. In order to successfully allege a "hot news" misappropriation claim the misappropriated material must be published by the defendant before the plaintiff has been able to utilize his competitive edge, *i.e.*, the Defendant needs to have undermined or diminished the value of the hot news by stealing Plaintiff's thunder.  *See Financial Info., Inc.,* 808 F.2d at 207-209.

In the fast-paced world of financial transactions, Plaintiff's subscribers, who presumably read Plaintiff's newsfeed to obtain timely information, will already have read and made use of

23

Plaintiff's information before such information appears on Defendant's website. Cpt. ¶ 27. Indeed, Plaintiff admits it has known of Defendant's actions since at least June 2004. Cpt. ¶ 19. Yet, for three and a half years following Plaintiff's actual knowledge of Defendant's alleged wrongful conduct, Plaintiff took no action against Defendant. Clearly, Defendant's alleged misappropriation was not, and is not, a serious threat to Defendant's business. Indeed, the Plaintiff's Complaint is devoid of any actual allegation showing losses of any kind.

Further, in order for a "hot news" misappropriation claim to survive federal preemption, the amount of information alleged to have been copied by defendant must be close to wholesale appropriation of the material. *Id.* at 207 n. 1. In *Financial Info., Inc.,* the record showed that the plaintiff's expert witness was statistically certain that defendant had copied 40-50% of the time and defendant submitted an exhibit showing that of its 1,400 bond entries in one year, 789 could not have come from copying the plaintiff's material. *Id.* Despite these high percentages of alleged copying, the court noted that the record did not support a finding of wholesale appropriation of plaintiff's bond cards because "at most Moody's used the FII information to provide one small piece of information for its News Reports." *Id.* The court then concluded that the plaintiff "proved neither the quantity of copying nor the immediacy of distribution necessary to sustain a 'hot news' claim" *Id.* at 209.

Likewise, here Plaintiff has only alleged that Defendant copied one small piece of information from Plaintiff's newsfeeds, far less than the percentage alleged to have been copied in *Financial Info.* and far less than the wholesale appropriation of news articles in *INS.* Cpt. ¶ 27. As a result, even if Defendant copied Plaintiff's newsfeed, which Defendant does not concede except for purposes of this Motion, such copying does not meet the bare minimum

pleading requirement for a misappropriation claim under New York law, and hence, the Complaint should be dismissed.

## <u>CONCLUSION</u>

Plaintiff's Complaint should be dismissed in its entirety, with an award of costs and attorney fees to Defendant for having to defend itself against this Complaint.

Date:   December 10, 2007                                Respectfully submitted,

<u>/s/ Barry M. Benjamin</u>
Barry M. Benjamin (BMB 7350)
**DAY PITNEY LLP**
7 Times Square
New York, New York 10036
bbenjamin@daypitney.com
Phone: (212) 297-5800
Fax:     (212) 916-2940

Attorneys for Defendant
Trade The News, Inc.

25