**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THEFLYONTHEWALL.COM, INC.,

    Plaintiff,

v.

TRADE THE NEWS, INC.,

    Defendant.

Case No. 07 CV 9612 (CM)(GWG)

ECF CASE

**PLAINTIFF'S MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Glenn F. Ostrager
Joshua S. Broitman
OSTRAGER CHONG FLAHERTY & BROITMAN P.C.
570 Lexington Avenue
New York, NY 10022-6894

*Attorneys for Plaintiff*
*Theflyonthewall.com, Inc.*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 3

      A.    Copyright Infringement ....................................................................... 4

      B.    Misappropriation ................................................................................. 5

ARGUMENT ...................................................................................................................... 5

TTN'S MOTION TO DISMISS
SHOULD BE DENIED IN ITS ENTIRETY ........................................................................ 5

I.       STANDARD FOR MOTION TO DISMISS .................................................... 5

II.      THE COMPLAINT STATES A CLAIM OF
        *INS* "HOT-NEWS" MISAPPROPRIATION ................................................. 6

      A.    TheFly Adequately Pleads Misappropriation
          Of Time-Sensitive Financial News .................................................... 8

      B.    TheFly Adequately Pleads "Free Riding" Based on Allegations
          Of Routine and Systematic Use Of Its Factual Financial Information.............. 10

III.     THE COMPLAINT STATES A CLAIM
        OF COPYRIGHT INFRINGEMENT ............................................................. 11

      A.    TheFly's Newsfeeds are Original and Protectable ............................. 12

      B.    TTN's Website is Copied From and
          Substantially Similar to TheFly's Newsfeeds ..................................... 16

IV.     TTN'S AFFIRMATIVE DEFENSE OF EQUITABLE
        ESTOPPEL PRESENTS FACT ISSUES WHICH
        CANNOT BE DETERMINED ON THIS MOTION ...................................... 18

      A.    Equitable Estoppel ............................................................................ 19

      B.    TTN Fails to Establish Equitable Estoppel....................................... 20

V.      THIS ACTION SHOULD NOT BE STAYED ................................................................. 21

VI.     LEAVE TO REPLEAD SHOULD BE GRANTED IF NECESSARY ........................ 22

CONCLUSION ...................................................................................................................... 23

TABLE OF AUTHORITIES

<u>Cases</u>

*American Steamship Owners Mutual Protection and
Indemnity Assoc. v. Lafarge N. Am., Inc.*
474 F. Supp. 2d 474 (S.D.N.Y. 2007)...................................................................................... 21

*Bell Atlantic Corp. v. Twombly*
__U.S.__, 127 S. Ct. 1955 (2007)........................................................................................... 5

*Bond Buyer v. Dealers Digest Publishing Co.*
25 A.D. 2d 158, 267 N.Y.S. 2d 944 (1ˢᵗ Dept. 1966)............................................................ 8, 9

*Boyle v. Stephens, Inc.*
No. 97 Civ. 1351, 1998 U.S. Dist. LEXIS 1968 (S.D.N.Y. Feb. 25, 1998) ......................... 14

*CBS Broadcasting Inc. v. ABC, Inc.*
No. 02 Civ. 8813, 2003 U.S. Dist. LEXIS 20258 (S.D.N.Y Jan. 14, 2003)......................... 15

*Cognotec Servs., Ltd. v. Morgan Guar. Trust Co. of New York*
862 F. Supp. 45 (S.D.N.Y. 1994)........................................................................................... 12

*Colo. River Water Conservation District v. United States*
424 U.S. 800, 96 S. Ct. 1236 (1976)...................................................................................... 21

*Davies v. Bowes*
209 F. 53 (S.D.N.Y. 1913), *aff'd*, 219 F. 178 (2d Cir. 1914) ............................................... 15

*Encyclopedia Brown Productions, Ltd. v. Home Box Office, Inc.*
No. 91 Civ. 4092, 1994 U.S. Dist. LEXIS 21372 (S.D.N.Y. Oct. 15, 1998) ........................ 20

*Feist Publications, Inc. v. Rural Telephone Service Co.*
499 U.S. 340, 111 S. Ct. 1282 (1991).................................................................................... 13

*Financial Information, Inc. v. Moody's Investors Service, Inc.*
808 F.2d 204 (2d Cir. 1986)........................................................................................... *passim*

*Great Am. Fun Corp. v. Hosung New York Trading Inc.*
935 F. Supp 488 (S.D.N.Y. 1996).......................................................................................... 12

*International News Service v. Associated Press*
248 U.S. 215, 39 S. Ct. 68 (1918)................................................................................... *passim*

*Iqbal v. Hasty*
490 F.3d 143 (2d Cir. 2007).................................................................................................... 5

*Kirch v. Liberty Media Corp.*
 449 F.3d 388 (2d Cir. 2006).................................................................................    6

*Kosakow v. New Rochelle Radiology Assocs., P.C.*
274 F.3d 706 (2d Cir. 2001)..................................................................................    19

*Kregos v. Associated Press*
3 F.3d 656 (2d Cir. 1993), *cert denied*, 510 U.S. 1112, 114 S. Ct. 1056 (1994)..................    15

*Lynch, Jones & Ryan, Inc. v. Standard & Poor's*
No. 117064/97, P.C. No. 13165
1998 N.Y. Misc. LEXIS 334 (Sup. Ct. June 15, 1998) ..........................................    8, 9

*Matthew Bender & Co., Inc. v. Kluwer Law Book Publishers, Inc.*
672 F. Supp. 107 (S.D.N.Y. 1987)...........................................................................    15

*Morrison v. Solomons*
494 F. Supp. 218 (S.D.N.Y. 1980)...........................................................................    15

*Nerney v. Valente & Sons Repair Shop*
66 F.3d 25 (2d Cir. 1995) .....................................................................................    22

*Nicholls v. Tufenkian Import/Export Ventures, Inc.*
No. 04 Civ. 2110, 2004 U.S. Dist. LEXIS 11403
(S.D.N.Y. June 24, 2004)........................................................................    11, 12, 16, 18

*Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*
166 F.3d 65 (2d Cir. 1999)...................................................................................    13, 16

*Price v. Fox Entertainment Group, Inc.*
No. 05 Civ. 5259, 2007 U.S. Dist. LEXIS 6081 (S.D.N.Y. Jan. 26, 2007).........................    19

*Ringgold v. Black Entertainment Television, Inc.*
126 F.3d 70 (2d Cir. 1997)...................................................................................    16

*Roth v. Jennings*
489 F.3d 499 (2d Cir. 2007)..................................................................................    6

*Sapient Corp. v. Singh*
149 F. Supp. 2d 55 (S.D.N.Y. 2001).......................................................................    21

*Silberman v. Innovation Luggage, Inc.*
No. 01 Civ. 7109, 2003 U.S. Dist. LEXIS 5420 (S.D.N.Y. April 3, 2003).........................    16

*Stern v. Gen. Elec. Co.*
924 F.2d 472 (2d Cir. 1991)..................................................................................    22

*The National Basketball Association v. Motorola, Inc.*
105 F.3d 841 (2d Cir. 1997)....................................................................... 1, 7, 8, 9, 11

*Torah Soft Ltd. v. Drosnin*
136 F. Supp. 2d 276 (S.D.N.Y. 2001)................................................................... 15

*Wainright Securities Inc. v. Wall Street Transcript Corp.*
558 F.2d 91 (2d Cir. 1977), *cert. denied*, 434 U.S. 1014, 98 S. Ct. 730 (1978)................... 13, 18

*Warner Bros. Inc. v. Am. Broadcasting Cos., Inc.*
654 F.2d 204 (2d Cir. 1981)............................................................................. 12

*Weissmann v. Freeman*
868 F.2d 1313 (2d Cir. 1989), *cert. denied*, 493 U.S. 83, 110 S. Ct. 219 (1989)................. 12


Statutes and Rules

Fed.R.Civ.P. 8 ............................................................................................... 1, 5

Fed.R.Civ. 12(b)(6)........................................................................................ 6, 18

Fed.R.Civ.P. 15 ........................................................................................... 22

## INTRODUCTION

Plaintiff Theflyonthewall.com, Inc. ("TheFly") brings this action against Trade The News Inc. ("TTN") asserting claims of *INS* "hot-news" misappropriation[1], and copyright infringement. The Complaint alleges that the parties are direct competitors.

In its motion to dismiss the Complaint,[2] TTN asks the Court to find as a matter of law that: (1) its use of factual news information from TheFly's newsfeed does not constitute "free riding,"  reduce TheFly's "incentive" to produce its newsfeed, or threaten TheFly's existence under the *INS* "hot-news" doctrine;  (2) TheFly's copyrights in its newsfeed, which are presumed valid, lack sufficient originality to merit protection, and that in any event TTN has not infringed the works, and (3) the affirmative defense of equitable estoppel bars TheFly's claims.   Also, TTN seeks a stay of this action pending the disposition of an unrelated action involving the TheFly and Wall Street investment houses.  We show below that TTN is wrong on all counts.

TTN confuses the burden of *pleading* the elements of *INS* "hot-news" misappropriation and copyright infringement under the notice standards of Fed.R.Civ.P. 8 with TheFly's burden of *proof* at trial.  First, the *INS* "hot-news" doctrine provides protection of property rights in time-sensitive "factual information" so that information will be made available to the public by profit-seeking entrepreneurs.  The claim requires allegations that a competitor is misappropriating, or "free riding" in a manner which threatens the incentive of a plaintiff to invest in news-gathering for the public interest.  *The National Basketball Association v. Motorola, Inc.*, 105 F.3d 841, 853 (2d Cir. 1997).  The Complaint adequately alleges an *INS* "hot-news" claim, and provides

---

[1]  *INS* "hot-news" misappropriation refers to a doctrine propounded by the Supreme Court in *International News Service v. Associated Press,* 248 U.S. 215, 39 S. Ct. 68 (1918).
[2]  The Complaint is annexed as Exhibit A to the Declaration of Barry Benjamin in support of TTN's motion to dismiss.

extensive examples of TTN's unlawful practice.  (*See* Compl. ¶¶ 26, 27-30, 37)   No more is required to state a cause of action.

Second, the Complaint adequately alleges claims for infringement of two U.S. Copyright registrations covering TheFly's newsfeed for the periods April 21, 2007 to May 20, 2007, and September 2, 2007 to September 30, 2007.   Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying.   It is axiomatic that "news events" many not be copyrighted.  However, TheFly does not seek protection for the news, but rather the manner of expression of its newsfeed, which is protectible.  The Complaint sets forth an extensive listing of copyrighted news articles and shows copying in TTN news reports. (*See* Compl. ¶ 25)  This infringement includes the copying of a number of errors from TheFly's newsfeed.   TTN's assertions on this motion that TheFly's newsfeed lacks "originality" or that its news reports are not "substantially similar" raise factual issues for trial.

Third, TTN's assertion that TheFly is equitably estopped from asserting its claims raises an affirmative defense which TheFly has no obligation to counter in its pleading.  The Complaint alleges that TheFly provided notice of certain of its claims in or about June 3, 2004, and thereafter repeated its demands to the present.  (*See* Compl. ¶¶ 19, 20)  TTN's assertion of detrimental reliance on TheFly's delay in commencing litigation raises fact issues for discovery and trial.   Similarly, TTN' submission of  a declaration of its principal Joseph Perrone, Jr. to support its equitable estoppel affirmative defense raises fact issues which are not appropriate for consideration on this motion.

Finally, in the alternative, TTN seeks a stay of this action pending disposition of an action captioned *Lehman Brothers Inc. v. Theflyonthewall.com, Inc.,* No. 06 Civ. 4908 (GBD).

TTN's assertion that the *Lehman* action "specifically and directly contests the validity of copyrights" alleged in the Complaint is in error.    There is no basis to stay this action.


## STATEMENT OF FACTS

TheFly is a single source Internet subscription news service that, for over six years, has been reporting relevant, market-moving financial news and information.  TheFly continually monitors and analyzes information flow from Wall Street investment firms.  (Compl. ¶¶ 8-10). TheFly's news service provides a constant feed of financial market information, including a live newsfeed (for example, analyst recommendations, midday break-ins and sell-side trading calls as they are being made to the buy-side), schedules of important events and presentations made by companies and analysts, and syndicate (analysis of deals assembled by groups of financial institutions). (*Id.*)  TheFly's news is distributed to its customers at its website, *www.theflyonthewall.com*, as well as through several financial content outlet partners.  (*Id.*, ¶ 2)

TheFly has expended and continues to expend substantial resources to enable it to quickly gather, edit and report financial news obtained from publicly available sources and through communications resulting from its professional relationships with trading desks, money managers and brokers throughout the financial industry.  (*Id.*, ¶ 10)   The Complaint alleges that TheFly's newsfeed constitutes "proprietary and economically valuable material" that is a "competitively significant component of TheFly's business."  (*Id.*, ¶¶ 2, 12)

The Complaint alleges that TTN "systematically accesses TheFly's newsfeed and, free riding on TheFly's significant news gathering and market research efforts, rushes to the market with the intent and effect of undermining TheFly's investment in providing its subscribers with its "time-sensitive" newsfeed.  (*Id.*, ¶ 1)  TTN operates a competitive commercial website,

*tradethenews.com,* which offers subscribers access to market analysis and real-time 24-hour headline coverage for global market news.  (*Id*., ¶ 14)  TTN describes itself as "the financial professional's most trusted source for real-time breaking financial news and analysis."  (*Id*., ¶ 15) In essence, TTN promotes itself as a source of information and analysis and its means of accomplishing this aim is to free ride on TheFly's proprietary newsfeed.  (*Id*., ¶ 18)

On June 3, 2004, TheFly, through its counsel, sent an e-mail to TTN's President, Joseph Perrone, Jr., advising that TTN was misappropriating information reported by TheFly and demanding that TTN cease such activities.  No response was forthcoming.  (*Id*., ¶19) Thereafter, TheFly at industry gatherings repeated its demands to Mr. Perrone.  (*Id*., ¶ 20)

The Complaint particularizes claims of both copyright infringement and *INS* "hot-news" misappropriation.

### A.   Copyright Infringement

TheFly is proprietor of U.S. Copyright Registration Nos. TX 6-607-623 and TX 6-613-007 for its newsfeed, respectively, covering the periods April 21, 2007 to May 20, 2007, and September 2, 2007 to September 30, 2007.  (*Id.*, ¶ 23).  TheFly has also filed copyright applications to register its newsfeed for the 2007 calendar year. (*Id.*, ¶ 24)  Examples of TTN's copying are illustrated in the Complaint at paragraph 25 by the comparison of portions of TheFly's newsfeed (by date and time) with corresponding reports by TTN at its website.  As shown in the comparison of the parties' publications, TTN on a number of occasions has published errors by TheFly, which evidences access and copying of TheFly's newsfeed.

B.     Misappropriation

The Complaint further alleges that TTN engages in "routine and systematic free riding" on TheFly's news gathering efforts by paraphrasing and republishing substantial portions of TheFly's newsfeed.  (*Id.*, ¶¶ 26, 27)   A table showing an "illustrative" comparison of TheFly's newsfeed and TTN republication of news reports, often within seconds, is set out in the Complaint at ¶ 27.   Again, as with the copyrighted newsfeeds, the comparison of TheFly's and TTN's news reports shows that TTN republishes "errors" in TheFly's news reports.  The Complaint alleges that TTN's activities substantially reduce the value of TheFly's time-sensitive newsfeed, and its incentive to continue investing in its business.  (*Id.*, ¶¶ 28-30)

## ARGUMENT

### TTN'S MOTION TO DISMISS
### SHOULD BE DENIED IN ITS ENTIRETY

## I.     STANDARD FOR MOTION TO DISMISS

In *Bell Atlantic Corp. v. Twombly,* __U.S. __, 127 S. Ct. 1955 (2007), the Supreme Court ruled that, under Fed.R.Civ.P. 8, the Complaint must contain factual "allegations plausibly suggesting (not merely consistent with)" an "entitlement to relief." 127 S. Ct. at 1966.  Although the complaint "does not need detailed factual allegations .... Factual allegations must be enough to raise a right to relief above the speculative level…, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)…." *Id.* at 1965.   The Second Circuit recently stated that *Twombly* requires a plaintiff to satisfy "a flexible 'plausibility standard', which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007).

In deciding a motion to dismiss, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Roth v. Jennings,* 489 F.3d 499, 510 (2d Cir. 2007); *Kirch v. Liberty Media Corp.,* 449 F.3d 388, 392 (2d Cir. 2006). Thus, on this motion, the Court need only decide whether there is any set of facts upon which TTN can be liable to TheFly for the acts of copyright infringement and *INS* "hot-news" misappropriation described in the Complaint.

## II.    THE COMPLAINT STATES A CLAIM OF *INS* "HOT-NEWS" MISAPPROPRIATION

The complaint alleges that TTN "routinely and systematically" misappropriates TheFly's "time-sensitive" newsfeed, free riding on TheFly's news gathering and market research efforts. TTN has gained commercial advantage in promoting its directly competitive news service presenting a "threat" to the maintenance of TheFly's news service to the public. The complaint further sets forth extensive factual evidence of TTN's practice of routine copying and misappropriation  There can be no question that this claim requires a fact-based determination for a jury, which is not the appropriate focus of a Rule 12(b)(6) motion.

The seminal case in this area of law is *International News Service v. Associated Press,* 248 U.S. 215, 39 S. Ct. 68  (1918), wherein the plaintiff AP and defendant INS were competing "wire services" that sold news to client newspapers. AP brought suit to enjoin INS from selling facts and information lifted from AP sources to INS affiliated papers. The Supreme Court affirmed an injunction prohibiting INS from copying news from AP's bulletin boards and early east coast editions of AP member newspapers, and re-publishing the lifted news in west coast INS newspapers. The Supreme Court characterized INS's conduct as

> amounting to an unauthorized interference with the normal operation of complainant's legitimate business precisely at the point where the profit is to be reaped, in order to divert a material portion of the profit from those who have earned it to those who have not; with special advantage to defendant in the competition because of the fact that it is not burdened with any part of the expense of gathering the news.

*INS*, 248 U.S. at 240.

In *The National Basketball Association v. Motorola, Inc.,* 105 F.3d at 845, the Second Circuit defined the requirements for *INS* "hot-news" misappropriation as follows:

> In our view, the elements central to an INS claim are: (i) the plaintiff generates or collects information at some cost or expense; (ii) the value of the information is highly time-sensitive; (iii) the defendant's use of the information constitutes free-riding on the plaintiff's costly efforts to generate or collect it; (iv) the defendant's use of the information is in direct competition with a product or service offered by the plaintiff; [and] (v) the ability of other parties to free-ride on the efforts of the plaintiff would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened. (Citations omitted)

In *Motorola,* the Second Circuit further explained that *INS* "hot-news" misappropriation claims are designed to protect the "news-reading" public and that the doctrine has been confined to guard against misappropriation in the news field.  The Court explained:

> INS is not about ethics; it is about the protection of property rights in time-sensitive information so that the information will be made available to the public by profit-seeking entrepreneurs.  If services like AP were not assured of property rights in the news they pay to collect, they would cease to collect it.  The ability of their competitors to appropriate their product at only nominal cost and thereby to disseminate a competing product at a lower price would destroy the incentive to collect news in the first place. The newspaper-reading public would suffer because no one would have an incentive to collect "hot-news".

*Id.* at 853.

Thus, the viability of the *INS* "hot-news" claim asserted in the Complaint is well established – especially because the parties are direct competitors in the financial news reporting field that offer "time-sensitive" news to paid subscribers. *See Lynch, Jones & Ryan, Inc. v. Standard & Poor's,* No. 117064/97, P.C. No. 13165, 1998 N.Y. Misc. LEXIS 334 (Sup. Ct. June 15, 1998); *Bond Buyer v. Dealers Digest Publishing Co.,* 25 A.D. 2d 158, 267 N.Y.S. 2d 944 (1st Dept. 1966); *Motorola, supra. at* 852, n.8 (observing that direct competition is central to the *INS* "hot-news" doctrine).

In order to avoid the obvious conclusion that TheFly's claims presents fact issues, TTN misconstrues the holding of *Motorola* and argues that TheFly has failed to establish the elements of "time-sensitivity" and "lost subscribers, revenue, or any harm to its business". TTN Brief at pp. 22-23.   Both of these attempts must be rejected.

### A.    TheFly Adequately Pleads Misappropriation Of Time-Sensitive Financial News

TTN argues that there can be no *INS*-type claim because it published the allegedly misappropriated newsfeed "after" TheFly and that, as a matter of law, the news was not "time sensitive".   The *INS* "hot-news" doctrine is "concerned with the copying and publication of information gathered by another before he has been able to utilize his competitive edge." *Financial Information, Inc. v. Moody's Investors Service, Inc.,* 808 F.2d 204, 209 (2d Cir. 1986).

In *Lynch, Jones & Ryan, Inc.*, plaintiff LJR was a publisher of a weekly research report entitled "Redbook Index" dealing with retail sales which it provided to paying subscribers who were principally institutional investors.  LJR released the Redbook Index to the general public 35 minutes after its publication (the "embargo period").  To maintain the research value of the Redbook Index, LJR's subscribers agreed to maintain the research confidential until its public

release.  Defendant, S&P, a direct competitor with LJR, obtained the Redbook Index during the

embargo period and republished it in a competitive on-line service.

LJR asserted an *INS* "hot-news" misappropriation claim arguing that dissemination of the

Redbook Index during the embargo period diluted the commercial value of the Redbook Index,

effectively destroying its incentive to create the Index.  As here, S&P argued in support of a

motion to dismiss that the Index did not constitute "hot-news" within the holding of *Motorola,*

*supra.*  The Court denied the motion to dismiss holding that LJR stated a cause of action for *INS*-

type misappropriation.  *Cf. Bond Buyer* (one publisher of municipal bond news sheet sold

teletype news to its subscribers before it published the material more widely; court enjoined

second publisher from using the news in order to publish simultaneous with the first publisher).

Here, the Complaint alleges that TTN republishes TheFly's newsfeed on a

contemporaneous basis – within seconds of its release, and that such conduct by "TTN reduces

the value of the newsfeed to TheFly's subscribers and inevitably will diminish the volume and

dollar value of business generated for TheFly."  (Compl. ¶ 29)   The Court is required to read the

Complaint liberally and draw inferences from these allegations in a light most favorable to

TheFly.   TTN seeks to require the Court to draw inferences in its favor, not TheFly's.

TTN's reliance on *Financial Information* is misplaced.  In this case, Financial

Information, Inc. ("FII") charged Moody's Investor Service, Inc. ("Moody's"), a rival news

reporting service, with copyright infringement and *INS* "hot-news" misappropriation.  At issue

was Moody's use of bond data which FII published in a Financial Daily Card Service ("Daily

Bond Cards").  The Second Circuit affirmed a district court determination, after trial, that Bond

Cards were not sufficiently original to merit copyright protection.

The *FII* Court also affirmed a trial determination that "FII proved neither the quantity of copying nor the immediacy of distribution necessary to sustain a 'hot' news claim." *Id. at* 209. Notably, the district court determined that to the extent Moody's did copy from FII, the information it published was at least ten days old. *Id.* Here, on this motion to dismiss, it cannot be determined as a matter of law, as TTN asserts, that TheFly's newsfeed loses its commercial value immediately upon its publication.

### B.    TheFly Adequately Pleads "Free Riding" Based On Allegations Of Routine and Systematic Use Of Its Factual Financial Information

TTN also argues that TheFly has not alleged a sufficient quantity of copying under the standard of *Financial Information* to set forth a claim of *INS* "hot-news" misappropriation. In particular, TTN asserts that the Complaint is limited to an allegation that "[d]efendant copied one small piece of information from Plaintiff's newsfeeds". TTN's brief at p. 24. TTN further cites to the detailed factual record of *Financial Information* which was reviewed by the Second Circuit after its remand for a second trial on the merits.

The Complaint is not as limited as TTN asserts. In pertinent part, the Complaint alleges that: "TTN continues in bad faith to violate TheFly's rights by accessing, and then posting, in summarized and slightly reworded form, the substantive core of TheFly's newsfeed, often within seconds of its limited release to TheFly's subscribers." (Compl. ¶ 26)  Numerous "illustrative" examples of this practice are set forth in the Complaint at paragraph 27. Finally, the Complaint alleges that this "routine and systematic free riding on TheFly's news gathering efforts and market research activities" will inevitably, adversely affect its willingness to continue to provide the public with its news service. (Compl. ¶¶ 28-30). This is precisely the harm against which the *INS* "hot-news" misappropriation doctrine is intended to protect.

TTN's reliance upon *Motorola* and *Financial Investments* for the proposition that

TheFly's misappropriation claim is preempted by the Copyright Law is misplaced. *Motorola*

held that an INS "hot-news" misappropriation claim survives preemption because it requires – in

addition to elements of copyright infringement – a showing of the following elements: "(i) the

time-sensitive value of factual information, (ii) the free-riding by a defendant, and (iii) the threat

to the very existence of the product or service provided by the plaintiff." *Motorola, supra. at*

853. In *Motorola*, the National Basketball Association ("NBA") sought to enjoin Motorola and

Sports Team Analysis and Tracking Systems ("STATS") from the sale of a "Sports Trax" hand

held pager, which displays updated information of professional basketball games in progress.

The Second Circuit vacated a permanent injunction by the district court, holding, *inter alia,* that

the NBA's claim of "hot-news" misappropriation missed the essential elements of competition

between the parties or free-riding on NBA's products which in this case was primarily

"generating the information by playing the games." *Motorola, supra. at* 853-54. Similarly, in

*Financial Information, supra. at* 209, the plaintiff failed to show at trial "neither the quantity of

copying nor the immediacy of distribution necessary to sustain a 'hot' news claim."


## III.    THE COMPLAINT STATES A CLAIM
##         OF COPYRIGHT INFRINGEMENT

A claim for copyright infringement is sufficiently pled when an owner of a valid

copyright avers: "(i) actual copying; and (ii) substantial similarity to the protected expression in

the copyrighted work." *Nicholls v. Tufenkian Import/Export Ventures, Inc*., No. 04 Civ. 2110,

2004 U.S. Dist. LEXIS 11403, *6 (S.D.N.Y. June 24, 2004)(denying Rule 12(b)(6) motion to

dismiss copyright infringement claim). TheFly's Complaint satisfies this pleading requirement.

The Complaint alleges that TheFly owns valid copyright registrations for its published newsfeeds

(¶¶ 22, 23), which constitute, e.g., proprietary financial news and market research, market analysis, news reports and analyst trading calls (¶¶ 1-3 and 8-12). The Complaint further alleges that TTN has copied and continues to copy TheFly's copyrighted newsfeeds (¶ 18), and that TTN's copying is substantially similar to the protected expression in the TheFly's copyrighted works (¶¶ 25, 26). No more is required to state a cause of action.

TTN's arguments that: (i) TheFly's newsfeeds contain nothing more than factual news that is not protected by copyright; and (ii) TTN's newsfeeds are not substantially similar to any copyrightable elements thereof, raise factual issues that are best left for trial. *See Id.* (determination of whether a design lacks originality raises factual issues). The determination of the extent of similarity that will constitute substantial similarity presents a highly fact specific question. *See Warner Bros. Inc. v. Am. Broadcasting Cos., Inc*., 654 F.2d 204, 208 (2d Cir. 1981). "For that reason, copyright cases are rarely dismissed on a 12(b)(6) motion". *Nicholls*, 2004 U.S. Dist. LEXIS 11403 at *8; *See also Great Am. Fun Corp. v. Hosung New York Trading Inc*., 935 F. Supp 488, 489 (S.D.N.Y. 1996)(the "question of substantial similarity should be reserved for the trier of fact"); *Cognotec Servs., Ltd. v. Morgan Guar. Trust Co. of New York*, 862 F. Supp. 45, 50 (S.D.N.Y. 1994)("A motion to dismiss is not the proper procedural mechanism to make this factual inquiry").

### A.    TheFly's Newsfeeds are Original and Protectable

The amount of originality required for protection under the Copyright Act is "modest". *Weissmann v. Freeman*, 868 F.2d 1313, 1321 (2d Cir. 1989), *cert. denied*, 493 U.S. 83, 110 S. Ct. 219 (1989). The Supreme Court noted that originality "means only that the work was independently created by the author (as opposed to copied from other works), and that it

possesses at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Telephone Service Co*., 499 U.S. 340, 345, 111 S. Ct. 1282, 1287  (1991).  The "requisite level of creativity is extremely low" and the "vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be."  *Id.*

TheFly does not dispute that facts and news events themselves may not be copyrighted. However, it is well-established that the manner and form in which TheFly expresses facts and news events in its newsfeeds is properly the subject of copyright protection.

> [I]n considering the copyright protections due a report of news events or factual developments, it is important to differentiate between the substance of the information contained in the report, i.e., the event itself, and "the particular form or collocation of words in which the writer has communicated it."  *International News Services, v. Associated Press, 248 U.S. 215, 234 (1918); see Chicago Record-Herald Co. v. Tribune Ass'n., 275 F. 797 (7th Cir. 1921)*.  What is protected is the manner of expression, the author's analysis or interpretation of events, the way he structures his material and marshals facts, his choice of words, and the emphasis he gives to particular developments.

*Wainright Securities Inc. v. Wall Street Transcript Corp*., 558 F.2d 91, 95-96 (2d Cir. 1977) , *cert. denied*, 434 U.S. 1014, 98 S. Ct. 730 (1978) (*underlining added*) (affording copyright protection to financial analytical research reports).  The Second Circuit further noted, and TTN does not dispute, that compilations of facts may be protected by copyright "because they can display originality in their selection, arrangement or presentation of facts ….  Description of facts afford even more room for originality."  *Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.,* 166 F.3d 65, 70 (2d Cir. 1999)(*citation omitted*)(affording copyright protection to financial news articles).

As set forth in the Complaint, TheFly's newsfeeds comprise proprietary financial news and market research as well as TheFly's analysis and interpretation of the news, presented in a

summary format created by TheFly (Complaint, ¶¶ 1-3, 8-12, 25 and 26).  Several examples of

TheFly's headlines were set forth in the Complaint at paragraph 25, including the following

headlines from September 6, 2007:

> XM Satellite-XMSR - target raised to $15 from $10-Hold @STFG.
> Stanford believes momentum is building in favor of XMSR's
> merger with SIRI following favorable comments from former FCC
> chairman and resignation of a senior DOJ official.
>
> Cameco-CCJ - target lowered to $63 from $73 on lower uranium
> forecast-TP@RBCM.  While RBC lowered their target to reflect
> their reduced uranium price forecast, they think shares offer
> excellent upside from current levels and maintains a Top Pick
> rating.

There can be no dispute that TheFly's manner of expressing this type of financial news, its

analysis and interpretation of these financial news events, as well as the way TheFly structured

the material, including TheFly's choice of words and the emphasis given to these developments

is protectable under the Copyright Act.

TTN's argument that such headlines present only factual information or short words and

phrases that are common jargon in the financial news industry goes to the merits of this action

and requires factual determinations of at least whether TheFly's headlines present only factual

information and whether the language used in TheFly's newsfeeds is "common jargon" in the

financial news industry.  These determinations are inappropriate for resolution on this motion.

The cases cited by TTN do not require a different result.  TTN's citation to *Boyle v.

Stephens, Inc*. No. 97 Civ. 1351, 1998 U.S. Dist. LEXIS 1968, at *14 (S.D.N.Y. Feb. 25, 1998)

is misplaced.  In *Boyle*, the court dismissed a copyright infringement complaint because the only

alleged copyrightable features were a simple and common graphic including a table with two

columns and several rows identifying age-based asset-allocation choices and the term "series".

In contrast, as set forth above, TheFly alleges copyright protection in its entire newsfeeds.

TTN's citation of *Davies v. Bowes*, 209 F. 53 (S.D.N.Y. 1913) *aff'd* 219 F. 178 (2d Cir. 1914) for the propositions that "no copyright on news exists" and that a copyright infringement claim based on news must fail as a matter of law is also misplaced.  (TTN Brief, p. 10)  In *Davies*, the trial court acknowledged that news can be protected ("Of course, a statement of fact may be protected by copyright against any piracy of the form of statement, because such form may, and often does, display literary effort of merit") but dismissed complaint on grounds that the alleged infringer did not copy the form of the statement.[3]

All of the other cases cited by TTN resulted in dismissal of a copyright claim after trial or a hearing on the merits.  For example, in *Financial Info., Inc. v. Moody's Investors Service, Inc*., 808 F.2d at 205 and in *Kregos v. Associated Press*, 3 F.3d 656, 659 (2d Cir. 1993), *cert denied*, 510 U.S. 1112, 114 S. Ct. 1056 (1994) the trial courts' opinions were appealed and the Second Circuit remanded both for further factual findings to determine whether the material in question was copyrightable.  Similarly, in *Morrison v. Solomons*, 494 F. Supp. 218, 226 (S.D.N.Y. 1980), the court dismissed the complaint after discovery and a 4 month trial.  In *CBS Broadcasting Inc. v. ABC, Inc.*, No. 02 Civ. 8813, 2003 U.S. Dist. LEXIS 20258 (S.D.N.Y Jan. 14, 2003), the court denied an application for preliminary injunction after an evidentiary hearing, but did not dismiss the complaint.  In *Matthew Bender & Co., Inc. v. Kluwer Law Book Publishers, Inc*., 672 F. Supp. 107, 108 (S.D.N.Y. 1987), the parties stipulated that there were no material issues of fact in dispute and the court granted summary judgment.  In *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276 (S.D.N.Y. 2001), the issue was also one of summary judgment after both parties presented evidence outside of the pleadings.

---

[3] The Second Circuit affirmed the decision on other grounds.

**B.    TTN's Website is Copied From and
<u>Substantially Similar to TheFly's Newsfeeds</u>**

Courts typically use the "ordinary observer" test when determining whether an alleged

infringing work is substantially similar to the copyrighted work, i.e., "whether an average lay

observer would overlook any dissimilarities between the works and would conclude that one was

copied from the other … excluding the unprotectible elements from consideration." *Nihon*

*Keizai Shimbun, Inc.* 166 F.3d  at 71.  TTN's assertion that a finding of substantial similarity

requires wholesale copying of "the complete presentation of Plaintiff's newsfeed" is incorrect.

The appropriate inquiry is whether "the copying is quantitatively and qualitatively sufficient" to

support a finding of infringement.  *Id.* (*quoting Ringgold v. Black Entertainment Television, Inc*.,

126 F.3d 70, 75 (2d Cir. 1997)).  However, "there are no bright line rules for what constitutes

substantial similarity, and the issue must be decided on a case by case basis" as it presents a

highly fact specific question.  *Nicholls*, 2004 U.S. Dist. LEXIS 11403 at *8 (*quoting Silberman*

*v. Innovation Luggage, Inc*., 2003 U.S. Dist. LEXIS 5420, No. 01 Civ. 7109 (S.D.N.Y. April 3,

2003)).

Here, the Complaint alleges that TTN built its business on routinely *copying* TheFly's

newsfeed and posting it, often within seconds of TheFly's news reports, on its website for the

benefit of its paying subscribers (¶ 18).  TTN did not bother to distinguish between the events

contained in TheFly's newsfeed and the manner of expression used by TheFly's analysts,

copying almost verbatim the most creative and original aspects of the newsfeed, including the

financial analyses and interpretation of the events, the way TheFly structured the copied

material, TheFly's choice of words and the emphasis TheFly gave to particular developments, all

of which represent a substantial investment of time, money and labor and are protectable under

the Copyright Act.  (Point II, A, *supra*)  Examples of TTN's unlawful copying are illustrated by

the following comparison of headlines, which show TTN's blatant copying of TheFly's arrangement and organization of the news, including sentence structure, phrasing and word choice (¶ 25):

| Date | TheFly's Newsfeed (italics shows what was copied) | TTN's Website |
|---|---|---|
| 09/6/2007 | 08:25:40<br><br>XM Satellite-XMSR<br><br>*target raised to $15 from $10-Hold* @STFG<br><br>Stanford *believes momentum* is *building in favor of* XMSR's *merger with SIRI following* favorable *comments from former FCC chairman and resignation of a senior DOJ official.* | 08:27:59<br><br>XM Satellite Radio Holdings Inc<br><br>Stanford<br>raised target to $15 from $10;hold –<br><br>Believes momentum building<br>in favor of merger with SIRI<br>following comments from<br>former FCC chairman and resignation<br>of a senior DOJ official |
| 09/6/2007 | 08:40:36<br><br>Cameco-CCJ<br><br>*target lowered to $63 from $73 on lower uranium forecast*-TP@RBCM<br><br>*While RBC lowered their target to reflect their reduced uranium price forecast, they think shares offer excellent upside from current levels and maintains a Top Pick rating.* | 08:42:42<br><br>Cameco Corporation (USA) RBC<br><br>lowers target to $63 from $73 on lower Uranium forecast –<br><br>While RBC lowered their target to reflect their reduced uranium price forecast, they think shares offer excellent upside from current levels and maintains a Top Pick rating |
| 09/10/2007 | 09:05:24<br><br>Isle of Capri-ISLE<br><br>view *recent weakness as a buying opportunity-Buy*@BMUR<br><br>*Brean Murray lowered estimates to reflect the Q1 miss but said the company is improving its asset quality, management team, and operations.* | 09:12:25<br><br>Isle of Capris Casinos Inc<br><br>Brean Murray sees recent weakness as a buying opportunity - buy –<br><br>Brean Murray lowered estimates to reflect the Q1 miss but said the company is improving its asset quality, management team, and operations. |

TTN's use of TheFly's newsfeed is blatantly self-serving, with the obvious intent, if not the effect, of fulfilling the demand for TheFly's work.  This is not legitimate coverage of a news event, but chiseling for profit.  *See Wainright Securities*, 558 F.2d at 96-97.  Further illustrative examples of TTN's unlawful copying are set forth in paragraphs 25 and 26 of the Complaint, and are in no way meant to be limiting.  TheFly is likely to discover additional examples of TTN's unlawful copying after a reasonable opportunity for discovery.

In its motion, Defendant asks this Court to make a factual inquiry regarding whether TheFly's newsfeed is sufficiently original to warrant protection under the Copyright Act, and whether the scope of that protection covers TTN's website, i.e., whether the relevant portions of TTN's website are substantially similar to the protectable elements of TheFly's copyrighted newsfeeds.  Such an analysis requires this Court to look beyond the Complaint (*see* POINT III A, *supra*)[4] and thus is improper on a Rule 12(b)(6) motion to dismiss.  *Nicholls*, 2004 U.S. Dist. LEXIS 11403 at *9.

## IV.    TTN'S AFFIRMATIVE DEFENSE OF EQUITABLE ESTOPPEL PRESENTS FACT ISSUES WHICH CANNOT BE DETERMINED ON THIS MOTION

The Complaint alleges that, on June 3, 2004, TheFly, through its counsel, communicated notice that TTN was misappropriating its information.  (Compl. ¶ 19)  Thereafter, TheFly repeated its demands to TTN to the present and the filing of this action.  (Compl. ¶ 20)  TTN asserts that from this conduct TheFly is equitably estopped from asserting both its claims of copyright infringement and misappropriation.

---

[4]  For example, TTN asserts that TheFly's attempt to show copying by identifying errors of fact that appeared in both TheFly's newsfeed and on TTN's website is of no moment because TTN obtained the incorrect information from a "common source".  TTN's Brief, p. 17.  TTN's assertion raises factual issues including whether TTN copied the mistakes from TheFly as asserted in the Complaint, and whether TheFly and TTN use common sources.

Most fundamentally, on this motion, TTN fails to explain how it justifiably relied to its detriment on any conduct by TheFly in the face of TheFly's "repeated demands" that TTN discontinue the conduct which is the subject of this action.   (Compl. ¶ 20)   It remains, however, that "[w]hether equitable estoppel applies in a given case is ultimately a question of fact." *Price v. Fox Entertainment Group, Inc.,* No. 05 Civ. 5259, 2007 U.S. Dist. LEXIS 6081 (S.D.N.Y. Jan. 26, 2007)(quoting *Kosakow v. New Rochelle Radiology Asocs., P.C.,* 274 F.3d 706, 725 (2d Cir. 2001).


### A.    **Equitable Estoppel**

The Court in *Price,* set forth the elements of an equitable estoppel defense as follows:

> Estoppel is a drastic remedy and must be utilized sparingly. Equitable estoppel applies in both law and equity to deny a litigant the right to plead or prove an otherwise important fact because of something he has done or omitted to do.  The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct. (citations omitted)

*Id.,* 2007 U.S. Dist. LEXIS 6081 *16.

In a copyright action,

> [E]stopel requires proof that (1) plaintiffs had knowledge of defendants' infringing conduct; (2) plaintiffs intended that defendants rely on plaintiffs' conduct, or plaintiffs acted in such a manner that defendants had a right to believe they were intended to rely on the conduct; (3) defendants were ignorant of the true facts; and (4) defendants did, in fact, rely to their detriment.  Defendants may prevail on their estoppel defense only if they can prove a reasonable and justifiable belief that plaintiffs gave them permission to copy.  (citations omitted)

*Id.,* 2007 U.S. Dist. LEXIS 6081 *17.

### B.    TTN Fails To Establish Equitable Estoppel

The Complaint alleges that TheFly provided TTN with ongoing notice of its claims, and that TTN declined to discontinue the complained of conduct.   At minimum, genuine fact issues are presented as to: (i) whether TheFly acted in a manner that TTN had a right to rely on its conduct, (ii) whether TTN did in fact rely on TheFly's conduct to its detriment, and (iii) whether TTN was actually prejudiced by reason of its alleged reliance based upon TheFly's conduct.

TTN argues that, as a matter of law, the Complaint does not state a cause of action for either *INS* "hot-news" misappropriation or copyright infringement.   Indeed, TTN maintains it has no information that would support TheFly's claims in this action.  TTN Brief at p. 7.   Absent is a lack of notice, or justifiable reliance by TTN on any action or inaction by TheFly.  Instead, TTN is a willful infringer that disregarded TheFly's notice of its claims.   However, it remains that at best the defense of equitable estoppel presents fact issues for trial.

*Encyclopedia Brown Productions, Ltd. v. Home Box Office, Inc.,* No. 91 Civ. 4092, 1994 U.S. Dist. LEXIS 21372 *39-41 (S.D.N.Y. Oct. 15, 1998), which TTN cites, does not support its position.  In this case, the plaintiff delivered six episodes of a show for airing by HBO.  Plaintiff asserted claims against HBO for copyright infringement arising from the alleged unauthorized airing of the shows.  On a motion for summary judgment, the Court found that the plaintiff was estopped from asserting its copyright claims where it demanded and accepted HBO's payment for the episodes, and further encouraged HBO to publicize its exhibition of the episodes.  From this conduct the Court found that plaintiff's conduct amounted to "express consent" to HBO's exhibition of the episodes.

Here, in contrast, TheFly communicated to TTN that its conduct was unacceptable.

## V.    THIS ACTION SHOULD NOT BE STAYED

TTN has not met its burden of showing that a stay of this action is warranted. The burden of proving the propriety of a stay is on the moving party. *See, e.g., Sapient Corp. v. Singh*, 149 F. Supp. 2d 55, 58-60 (S.D.N.Y. 2001); *Colo. River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246 (1976)(Courts have a "virtually unflagging obligation … to exercise the jurisdiction given them."). Courts in this circuit generally consider the following in determining whether an action should be stayed:

> "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." GTFM, Inc. v. Park, No. 02 Civ. 7020, 2002 U.S. Dist. LEXIS 24793, 2002 WL 31890940, at *2 (S.D.N.Y. Dec. 30, 2002) (citation omitted). These factors are to be balanced, with the principal objective being the avoidance of unfair prejudice. Consol. Edison Co. of N.Y. v. United States, 30 F. Supp. 2d 385, 389 (S.D.N.Y. 1998) (declining to stay a declaratory judgment action upon balancing of factors). "The party moving for a stay 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.'" Authors Guild, Inc. v. Dialog Corp. (In re Literary Works in Elec. Databases Copyright), 2001 U.S. Dist. LEXIS 2047, 2001 WL 204212, at *2 (S.D.N.Y. Mar. 1, 2001) [*19]  (quoting Landis v. N. Am. Co., 299 U.S. 248, 255, 57 S. Ct. 163, 81 L. Ed. 153 (1936)). <u>When a district court decides to grant a stay, "it presumably concludes that the parallel litigation will be an adequate vehicle for the complete resolution of the issues between the parties."</u> Id. (citation omitted).

*American Steamship Owners Mutual Protection and Indemnity Assoc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474 (S.D.N.Y. 2007)(denying stay).

The only argument presented by TTN to support a stay is that a pending, unrelated lawsuit filed by Lehman Brothers, Morgan Stanley and Merrill Lynch against TheFly captioned *Lehman Brothers Inc. v. Theflyonthewall.com, Inc.,* No. 06 Civ. 4908 (GBD)("the Lehman

action") "specifically and directly contests the validity of copyrights" alleged in the TheFly's complaint against TTN. This is in error. The copyrighted research reports asserted to be infringed in the Lehman action were all published in 2005 and therefore cannot be the basis for the current lawsuit. *See* paragraphs 22-24 of the Lehman action Complaint (attached as Ex. B to the Perrone Declaration submitted by TTN). In the present action, TheFly asserts claims of copyright infringement arising from TheFly's newsfeeds published in 2007, two years later. In addition, TheFly's claims against TTN arise from TTN's copying of TheFly's newsfeed concerning many other securities that are not plaintiffs in the Lehman action, for example, "STFG," "RBCM" and "Brean Murray". (Compl. ¶ 25). There is no cloud over TheFly's title in the copyrighted works asserted in this action, and the resolution of the Lehman action will not resolve the issues asserted by TheFly against TTN. On the contrary, if the Court stays this action, it will indefinitely permit TTN's misappropriation and copyright infringement to continue to injure TheFly. Therefore, a stay in this action is not warranted.

## VI.    LEAVE TO REPLEAD SHOULD BE GRANTED IF NECESSARY

TTN's motion to dismiss should be denied in its entirety. However, in the event that the Court finds that TheFly's Complaint has not been sufficiently pled, TheFly requests leave to amend to correct the deficiencies pursuant to Fed. R. Civ. P. 15. The Second Circuit has cautioned that leave to replead should be freely granted unless it is clear that any amendment of a claim would be futile. *See*, *e.g.*, *Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 29 (2d Cir. 1995); *Stern v. Gen. Elec. Co.*, 924 F.2d 472, 477-78 (2d Cir. 1991).

## VII.    CONCLUSION

TTN's motion should be denied in its entirety.


Dated:  New York, New York
        January 9, 2008


                            Respectfully submitted,


                            OSTRAGER CHONG FLAHERTY
                              & BROITMAN P.C.


                    By:    /s/ Glenn F. Ostrager
                            Glenn F. Ostrager (GFO-2023)
                            Joshua S. Broitman (JSB-4644)

                    570 Lexington Avenue
                    New York, New York 10022-6894
                    (212) 681-0600

                    *Attorneys for Theflyonthewall.com, Inc.*


23